# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3706

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri |
| Marcus De'Angelo Jones, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 12, 2001
Filed: September 12, 2001

_____

Before MORRIS SHEPPARD ARNOLD and RICHARD S. ARNOLD, Circuit
Judges, and TUNHEIM,[1] District Judge.

_____

TUNHEIM, District Judge.

Appellant Marcus De'Angelo Jones challenges his convictions for felony possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(e) as well as for making false statements to acquire a firearm in violation of 18 U.S.C. § 922(a)(6) and § 924(a)(1)(B). Jones challenges the sufficiency of the evidence, a number of

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

evidentiary rulings, and the district court[2] decision to deny his motion to suppress statements. We affirm.

## BACKGROUND FACTS

On July 25, 2000, Jones was found guilty by a jury of the three counts in the indictment: two counts of felony possession of a firearm and one count of making false statements to acquire a firearm. He was sentenced to 327 months imprisonment on each of the felon in possession counts and 60 months on the false statement count, the sentences to run concurrently.

At trial, the government introduced evidence that Jones possessed a firearm on two separate occasions: during a traffic stop on August 18, 1999; and during an incident on October 9, 1999, when Jones reported being shot at. The prosecution also introduced evidence of five prior felony convictions through the testimony of a federal probation officer and a fingerprint expert. With respect to the charge of making false statements to acquire a firearm, the government introduced evidence that Jones provided false information about his criminal history on a form that he filled out before purchasing a handgun.

## A.    December Arrest

On December 21, 1999, Jones was arrested at an Amoco Quick Store in Columbia by Columbia Police Officer Ben White.[3] Jones was not immediately read his Miranda rights, but was transported to the police station in a squad car. Officer White

_____

[2] The Honorable Scott O. Wright of the United States District Court for the Western District of Missouri presided over the trial and the sentencing of this matter.

[3] The December 21, 1999, arrest was the result of drug purchases that Officer Candy Cornman made from Jones in her undercover capacity.

testified that at the police station Jones was processed, booked, and read his <u>Miranda</u> rights. Officer White testified that he did not read the rights from a card, but recited them from memory. After informing Jones of his rights, Officer White testified that Jones agreed to answer some questions. Appellant explained to White that he had used the name "Jones" to purchase a handgun from a pawn shop. Appellant also told Officer White that he changed his name from "Lee" to "Jones" after being released from prison in Tennessee. Jones admitted that the Columbia Police had seized his gun during an earlier incident and that he knew that he was not supposed to have a gun.

Jones moved to suppress these statements before trial, arguing that he had not been read his <u>Miranda</u> rights until after his conversation with Officer White was almost over. The district court denied the motion to suppress and Officer White was permitted to testify at trial about the arrest and subsequent statements of Jones.

## B.    Trial Testimony Regarding Firearm Purchase

At trial, the government introduced evidence that on August 18, 1999, Jones purchased a 9mm Makarov semiautomatic handgun from the Callaway Pawn and Gun Shop located in Callaway, Missouri. In order to purchase the gun, Jones filled out Form 4473, a federal form that is required before any person may buy a handgun. Certain answers on the Form 4473 disqualify a person from being able to purchase a firearm. One of those questions is, "Have you ever been convicted in any court of a crime for which a judge could have imprisoned you for more than a year, even if the judge gave you a shorter sentence?" In response to that question on the Form 4473, Jones answered "no." The owner of the pawn shop testified during trial that he watched Jones fill out the Form 4473. The owner also testified that had Jones answered "yes" to that question he would not have sold Jones the weapon. Before the sale, Jones also filled out a state permit application for the gun. On the permit application, Jones again answered that he had not been convicted of a crime that was punishable by imprisonment for a term exceeding one year.

After Jones filled out his state permit application, the Sheriff of Callaway County performed a background check on him as required by law. Before a gun dealer may release the firearm to the customer, the Sheriff must perform a background check and issue a permit. The background check was completed and the permit issued to Jones.

On both the Form 4473 and the state permit application, appellant used the name "Jones" rather than the name under which he had previous felony convictions, "Lee." In addition, the middle two digits of his social security number written on the Form 4473 were somewhat unclear. The actual two middle digits of his social security number are "25," while the numbers on the form were mistaken for the number "28." The name and social security number were the two primary pieces of information used by the Sheriff's office to perform the background check.

## C.    Trial Testimony Regarding Firearm Possession

During its case in chief, the government introduced the testimony of Columbia Police Detective Candy Cornman. In an undercover role for the Columbia Narcotics Unit, Officer Cornman testified that she met with Jones on August 18, 1999 at a supermarket in Columbia to purchase drugs from him. She testified that during the meeting Jones told her that he had been stopped by the police earlier in the day and that they had found his gun. Officer Cornman, however, did not see a gun at anytime during their meeting.

Officer Melvin Buckner of the Columbia Police Department also testified at trial that he stopped Jones on August 18, 1999 for running a stop sign. During the stop, Jones told Buckner that he had a gun in the car. After seeing the gun, Officer Buckner removed the weapon from the car and asked Jones for a driver's license. Officer Robert Bennett then arrived at the scene. He secured the weapon and identified it as a 9mm Makarov. He than ran a computer check on the weapon. After examining Jones's paperwork for the weapon, Bennett returned the firearm to him when the computer

check revealed that the gun was not stolen. Bennett noted that according to his permit, Jones had purchased the gun that day. Bennett testified to these events at trial.

The government also introduced the testimony of another Columbia Police Officer, Cathy Dodd, at trial. Officer Dodd testified that on October 9, 1999, she was dispatched to an area in Columbia based on a "shots fired" report. Jones was the complainant and reported to Officer Dodd that he had been shot at. Upon inspection of the scene, Dodd noted that there was a hole in the hood of Jones's car and that the vehicle had a flat tire. Dodd impounded the car as evidence, and when doing so saw a gun between the seats of the car. At the police station, Jones admitted to Officer Dodd that he had a gun with him in the car and he showed her his permit. Jones also told Officer Dodd that he had fired off a round into the air, that the gun jammed, and he had tried to fire another round. Jones was released after the interview, but the gun was retained by the police.[4]

## D.    Trial Evidence Regarding Appellant's Prior Felony Convictions

The government introduced the testimony of Federal Probation Officer Paul Reed at trial on the issue of appellant's status as a felon. Officer Reed testified that he knew appellant by two names: "Marcus Deangelo Jones" and "Marcus Deangelo Lee." Reed also testified that based on certified and other records uncovered during his investigation, that appellant had been convicted of several felonies before 1999 and that appellant had served a prison sentence of more than 1 year on one or more occasions. He also testified that all of appellant's convictions were in Tennessee under the name "Lee."

---

[4] Columbia Police Officer Don Hawkins also testified at trial, corroborating Officer Dodd's testimony. Officer Hawkins testified that he saw a handgun in the back seat of Jones's vehicle and then seized the handgun. He also testified that he entered the gun into evidence at the police station.

Next, the government introduced the testimony of a fingerprint expert, Roy Kutner, a Bureau of Alcohol, Tobacco and Firearms fingerprint examiner. Kutner examined certified and other records of Jones's prior convictions that contained fingerprints and compared those prints to the fingerprints taken by the Columbia Police Department after Jones's December 21, 1999 arrest. Kutner concluded that the prints on all of the documents he examined belonged to the same person.

## E.     Appellant's Trial Testimony

Jones testified at trial in his own defense. He testified that he was born Marcus Lee, but that he changed his name to Marcus Jones in 1999. He also testified that his social security number is 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 and that he lived in Columbia and Fulton, Missouri.

Jones also admitted to purchasing a handgun at the Callaway County Pawnshop. He said that he used his real social security number and the name "Jones" to purchase the handgun. He testified that he told the pawn shop owner that he had done time in Tennessee and also testified that he answered "yes" to the question of whether he had been convicted of a prior felony. Jones admitted serving jail time, but thought that it was possible his convictions might be wiped clean after five years. He also testified that he knew he had been convicted of a felony. By the end of his testimony, Jones had agreed that he had been convicted of five separate felonies. After Jones's testimony, the case was submitted to the jury and Jones was found guilty on all three counts.

## DISCUSSION

## I.     Sufficiency of the Evidence

In reviewing the sufficiency of the evidence, the Court looks "at the evidence in the light most favorable to the verdict and accept[s] as established all reasonable

inferences supporting the verdict." United States v. Davis, 154 F.3d 772, 786 (8ᵗʰ Cir. 1998). We will reverse a conviction only if no reasonable jury could have found defendant guilty beyond a reasonable doubt. United States v. Frayer, 9 F.3d 1367, 1371 (8ᵗʰ Cir. 1993).

Jones challenges the sufficiency of the evidence supporting his conviction for making a false statement in acquiring a firearm.[5] Jones argues that to be convicted he must have known that the statement he made was false or fictitious. The alleged false statement made by Jones was his response of "no" to the questions on Form 4473 concerning prior felony convictions. Specifically, Form 4473 asked, "Have you been convicted in any court of a crime for which a judge could have imprisoned you for more than a year, even if the judge actually gave you a shorter sentence?" He answered "no" to a similar question on the state permit application.

There was sufficient evidence presented to the jury that it could infer Jones's knowledge that his answer to that question was false. Appellant used the name "Jones" on the Form 4473 (and the permit application) even though all of his previous convictions were under the name "Lee." Further, Jones admitted at trial that he had told the pawn shop owner that he had served time in Tennessee. He also admitted during trial that he knew he had been convicted of multiple felonies. Jones's knowledge

_____

[5] It does not appear that Jones is challenging the sufficiency of the evidence for the felony possession convictions. However, in the event Jones intended to challenge those convictions, the Court has no difficulty finding that the government proffered sufficient evidence that the jury could find appellant guilty on both counts. The only argument Jones makes concerning the sufficiency of the evidence is that he did not have knowledge of his prior felony convictions. The government need not prove knowledge, but only the fact of a prior felony conviction. United States v. Kind, 194 F.3d 900, 906 (8ᵗʰ Cir. 1999) ("it is well settled in this circuit that the government need only prove defendant's status as a convicted felon and knowing possession of the firearm), cert. denied, 528 U.S. 1180 (2000). There was ample evidence presented to the jury of appellant's prior felony convictions.

of his prior felony convictions was also corroborated by the testimony of Officer White, who testified at trial to statements Jones made to him after the December 21, 1999 arrest. Given this evidence, the jury could reasonably conclude that Jones knew his answer to the question on the Form 4473 regarding prior felony convictions was false. There was sufficient evidence to support the verdict on all counts.

## II.     Evidentiary Issues

### A.     Use of Multiple Convictions to Prove Appellant's Status as a Felon

Jones challenges the district court decision permitting the government to introduce evidence of five prior felony convictions to prove appellant's status as a felon for purposes of the felon in possession counts. We will reverse this evidentiary ruling only if there was a clear abuse of discretion. United States v. Whitfield, 31 F.3d 748, 749 (8th Cir. 1994).

In order to establish the essential elements of felony possession of a firearm, the government had the burden to prove that Jones possessed a firearm and that he had been convicted of a crime punishable by a term exceeding one year. 18 U.S.C. § 922(g)(1). Appellant argues that the decision by the district court to allow the government to introduce evidence of more than one conviction was prejudicial and should have been excluded pursuant to Federal Rule of Evidence 403. We disagree.

In this case, the government made numerous offers to Jones, both before trial and during trial, to stipulate to his status as a felon. Jones rejected all overtures by the government and instead chose to put the government to its burden of proof on that element of the crime. The government then introduced evidence, through a probation

officer and fingerprint expert, that Jones had been convicted of five prior felonies.[6] The testimony concerning each felony was limited to the fact that Jones had been confined for more than one year on each conviction and that it was, in fact, Jones who was convicted. The government did not introduce evidence concerning the nature or the name of the convictions. Compare Old Chief v. United States, 519 U.S. 172, 190-92 (1997) (explaining that a court that denies a defense stipulation to felon status and permits the prosecution to introduce evidence of the name and nature of prior convictions may be an abuse of discretion). Multiple convictions were introduced to ensure that the government could satisfy its burden of proof in the event Jones was successful in contesting one or more of the convictions in front of the jury.

Because appellant chose not to stipulate to his status as a felon, it was not improper for the district court to allow the prosecution to present limited evidence of multiple felony convictions in order to sustain its burden of proof on that element of the crime. United States v. Garner, 32 F.3d 1305, 1311 (8th Cir. 1994) (finding no error when the government was allowed to present evidence of five prior felony convictions); United States v. Lloyd, 981 F.2d 1071, 1072 (9th Cir. 1992) (finding that the court may, in its discretion, permit the government to introduce more than one prior felony conviction if defendant refuses to stipulate to status as a felon).

## B.      Testimony of Probation Officer

Jones also contends that the district court's decision to admit the testimony of a federal probation officer concerning his presentence investigation interview with appellant was erroneous. We review a district court's denial of a motion to suppress under the clearly erroneous standard. United States v. Jacobs, 97 F.3d 275, 279 (8th Cir. 1996) (citing United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990)).

---

[6] The record indicates that Jones had actually been convicted of eleven prior felonies, but the government chose to introduce only five convictions.

Jones argues that he should have been given <u>Miranda</u> warnings before the presence interview and that he should have been permitted to have his attorney present. The record shows that the only information Officer Reed disclosed at trial from his presentence interview with Jones was appellant's address. The remaining information concerning Jones's prior convictions about which Officer Reed testified, was information that he gathered through a review of certified and other records.

Requests for routine information such as name and address, which is necessary for basic identification purposes, is not interrogation for purposes of <u>Miranda</u>.[7] <u>United States v. McLaughlin</u>, 777 F.2d 388, 392-93 (8th Cir. 1985) (questioning by a pretrial services officer relating to employment and home address not interrogation under <u>Miranda</u>). The information sought by the probation officer in this case was routine identification information and resulted from the officer's normal fact-finding responsibility. <u>Id</u>. at 394. Accordingly, the district court did not err in permitting Officer Reed's testimony.

## C.    Testimony of a Previously Unendorsed Witness

Jones asserts that the district court committed error by permitting Columbia Police Officer Cathy Dodd to testify despite the fact that she had not been previously included on the prosecution's witness list. We review a decision to admit evidence over a party's objection under an abuse of discretion standard. <u>Whitfield</u>, 31 F.3d at 749.

_____

[7] The Court notes that there is a question about whether <u>Miranda</u> is even implicated in a situation such as this, involving a federal probation officer. <u>Baumann v. United States</u>, 692 F.2d 565, 575-77 (9th Cir. 1982) (<u>Miranda</u> not applied to routine presentence interviews); <u>United States v. Jackson</u>, 886 F.2d 838, 842 n.4 (7th Cir. 1989) (finding that Fifth Amendment is not implicated by federal probation officer); <u>United States v. Rogers</u>, 921 F.2d 975, 979 (10th Cir. 1990) ("Miranda warnings are not required prior to routine post conviction presentence interviews").

We will reverse only when an erroneous evidentiary ruling affected the substantial rights of the defendant. United States v. DeAngelo, 13 F.3d 1228, 1233 (8th Cir. 1994).

While it may have been improper for the district court to permit Officer Dodd to testify when she was not previously disclosed as a witness to the appellant, any error here was harmless and did not affect appellant's substantial rights. Officer Dodd was called to testify about the incident on October 9, 1999, when she responded to a "shots fired" report involving Jones. Although Officer Dodd's name was not on the original witness list, her name was read as a potential witness during voir dire. Moreover, Officer Dodd's police report from October 9 was turned over to Jones during discovery before trial. Although Jones objected to Officer Dodd's testimony at trial, appellant did not move for a continuance or suggest that he was unprepared to cross-exam the witness. Further, Officer Hawkins testified at trial and corroborated Officer Dodd's testimony concerning the handgun found in Jones's vehicle that day. The prejudicial effect to appellant under these circumstances is minimal and the district court did not abuse its discretion in permitting Officer Dodd to testify. United States v. Bissonette, 164 F.3d 1143, 1145 (8th Cir. 1999); United States v. McClendon, 587 F.2d 384, 398 (8th Cir. 1978); United States v. Wood, 780 F.2d 555, 561 (6th Cir. 1986).

### D.    Testimony Concerning Events Occurring on August 18, 1999

Jones asserts that the district court erred in permitting Columbia Police Officer Candy Cornman to testify about a conversation that she had with appellant on August 18, 1999. Jones contends that he was acquitted in a different trial of a firearm charge in connection with a narcotics transaction about which Officer Cornman testified. Jones argues that the district court should have excluded the evidence concerning the drug transaction because it was evidence of other crimes pursuant to Federal Rule of Evidence 404(b) and because it violated the Double Jeopardy clause of the Fifth Amendment of the United States Constitution. Denial of a double jeopardy claim is reviewed de novo. United States v. Ivory, 29 F.3d 1307, 1310 (8th Cir. 1994).

In order to succeed on a double jeopardy claim, appellant must show that the two offenses charged are in law and fact the same offense. United States v. Okolie, 3 F.3d 287, 289 (8th Cir. 1993). The critical issue in determining whether two crimes constitute the same offense for purposes of double jeopardy is whether they consist of the same elements. United States v. Rogers, 18 F.3d 1425, 1428 (8th Cir. 1994). Felony possession of a firearm requires proof of three elements: (1) a prior felony conviction; (2) knowing possession of a firearm; and (3) an interstate nexus. 18 U.S.C. § 922(g)(1). The crime of carrying a firearm during a narcotics transaction requires proof of two elements: (1) that defendant carried a firearm during a narcotics transaction; and (2) guilt of an associated narcotics felony. 18 U.S.C. § 924(c).

The Supreme Court has previously explained that "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Albernaz v. United States, 450 U.S. 333, 337 (1981); United States v. Townsley, 843 F.2d 1070, 1081 (8th Cir. 1988). Here, the felony possession charge required proof of a previous felony, a fact not required for proving the crime of carrying a weapon during a narcotics transaction. Similarly, carrying a firearm during a narcotics transaction requires that the government prove guilt of a narcotics charge, a fact that is unnecessary for the felony possession offense. Because each offense requires proof of fact which the other does not, the double jeopardy clause is not implicated in this case.

Appellant also argues that the testimony of Officer Cornman was improperly admitted pursuant to Federal Rule of Evidence 404(b). Related to this assertion of error, appellant argues that because Officer Cornman's testimony was permitted, he should have been allowed to introduce evidence of his acquittal to the charge of carrying a firearm during a narcotics transaction. The latter decision is reviewed under an abuse of discretion standard. United States v. McMurray, 34 F.3d 1405, 1411 (8th Cir. 1994); United States v. Whitfield, 31 F.3d 747, 749 (8th Cir. 1994).

-12-

However, the district court decision to admit Officer Cornman's testimony is subject only to plain error review. When the specific grounds for an objection are not made at trial, the evidentiary ruling is entitled to plain error review. United States v. Swanson, 9 F.3d 1354, 1357 (8th Cir. 1993); United States v. Helmel, 769 F.2d 1306, 1316-17 (8th Cir. 1985). Having reviewed the trial transcript, the Court finds that defense counsel never made clear the basis for his objection to the testimony of Officer Cornman.[8] As such, plain error review of the district court's decision to admit the testimony of Officer Cornman is appropriate. Under the plain error standard, we will reverse the district court only if the error prejudices the substantial rights of the defendant, and would result in a miscarriage of justice. Id. The Court cannot find that any such error occurred in this case.

While we have some concern that the testimony of Officer Cornman regarding the reason for meeting with Jones, i.e., to purchase drugs, was prejudicial, there was no plain error. The district court presumably allowed the testimony of Officer Cornman because it was an admission by Jones of carrying a firearm earlier in the day. This evidence is direct evidence of one element of the crime rather than improper character evidence under 404(b) as appellant suggests. Moreover, Officer Cornman's testimony on this issue was not the only evidence admitted at trial that Jones was in possession of a weapon that day. Officer Buckner, the officer who actually stopped Jones earlier in the day and discovered the weapon, also testified during the trial. Given these circumstances, the district's court's ruling on this testimony did not prejudice the substantial rights of the defendant.

---

[8] The Court notes that counsel for Jones made clear that he was objecting to Officer Cornman's testimony on double jeopardy grounds. However, in his second objection to the testimony, counsel for Jones did not articulate any specific ground for the objection.

Additionally, the decision not to permit Jones to introduce evidence of his previous acquittals was not an abuse of discretion. The general rule is that "a judgment of acquittal is not generally admissible to rebut inferences that may be drawn from evidence that was the basis of a previous trial." Prince v. A.L. Lockhart, 971 F.2d 118, 122 (8ᵗʰ Cir. 1992). This rule is based on the fact that acquittals are hearsay and that judgments of acquittal are usually not relevant because they do not prove innocence, but only show that the government did not meet its burden of proof. Id. In this case, permitting evidence of appellant's acquittal on the firearm possession charge in connection with the narcotics transaction would not have proven that Jones did not possess a firearm. The acquittal in the earlier trial could have been based on any one of a number of findings by the jury. Because the acquittals were hearsay and did not prove any one fact, appellant's substantial rights were not prejudiced by the refusal to allow the evidence to be heard by the jury.

## III.    Motion to Suppress

Jones argues that his statements made to police officers after his arrest on December 21, 1999 should have been suppressed because he was not read his Miranda rights. Jones also contends that at the time of his arrest he was placed in a police-dominated atmosphere and his liberty was restrained, triggering the need for a Miranda warning. The district court did not err in denying Jones's motion to suppress the statements.

Jones sought to suppress two separate statements he made on December 21, 1999. The first statement, made after Jones was arrested while he was in the police car on the way to the station, was not used during trial. Because this statement was not used at trial, the Court need not address whether Jones's motion was properly denied. United States v. Alvarado-Delgado, 98 F.3d 492, 494 (9ᵗʰ Cir. 1996) (noting that defendant's initial statements were not admitted at trial and the court therefore need not consider whether the pre-Miranda statements were admissible); Reynolds v. A.L.

-14-

Lockhart, 497 F.2d 314, 315 (8th Cir. 1974) (explaining that none of petitioner's incriminating statements were admitted at trial and the exclusionary rule therefore has no application).

Jones's second statement was made after he was processed and booked at the police station. He claims that no Miranda warning was given to him until after he made incriminating statements at the police station to Officer White. Officer White testified that he informed Jones of his Miranda rights at the time of the booking, reciting them from memory. The district court found that Jones had been given his Miranda rights by Officer White at the police station and then knowingly and voluntarily waived those rights.

The question before this Court is essentially one of credibility: whether the testimony of Officer White or the testimony of Jones was more credible. Credibility determinations are best left to the sound discretion of the trial judge. United States v. E.R.B., 86 F.3d 129, 130 (8th Cir. 1996). There is nothing in the record before this Court to call into question the credibility determination made by the district court that Officer White recited Miranda rights to Jones at the time of booking. Accordingly, the district court decision to deny Jones's motion to suppress statements made to the police after his arrest is affirmed.[9] Untied States v. Sturgis, 238 F.3d 956, 958 (8th Cir. 2001) (affirming district court decision based on credibility determination); United States v. Moss, 138 F.3d 742, 744 (8th Cir. 1998) (affirming district court drug quantity determination based on a credibility determination); United States v. Lank, 108 F.3d

---

[9] The Court also notes that there is no evidence in the record to indicate that there was any coercion on the part of the police officers. Even if this Court were to have found that defendant was not read his Miranda rights, the absence of any coercion would still result in the affirmance of the district court's decision to deny defendant's motion to suppress. Colorado v. Connelly, 479 U.S. 157, 167 (1986); United States v. Kime, 99 F.3d 870, 880 (8th Cir. 1996).

860, 862 (8th Cir. 1997) (stating that court would not disturb district court credibility finding).

## CONCLUSION

For the reasons set forth above, appellant's convictions are affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.