# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1286
_____

Marcus Deangelo Jones

*Plaintiff - Appellant*

v.

Dewayne Hendrix, Warden

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Helena

_____

Submitted: April 16, 2021
Filed: August 6, 2021

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Marcus DeAngelo Jones filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his 2000 felon-in-possession conviction under *Rehaif v. United States*, 588 U.S. ---, 139 S. Ct. 2191 (2019). The district court[1] dismissed

---

[1]The Honorable J. Thomas Ray, United States Magistrate Judge for the Eastern District of Arkansas, whose jurisdiction the parties consented to pursuant to 28 U.S.C. § 636(c).

Jones's petition, concluding that Jones had not shown that 28 U.S.C. § 2255's remedy was ineffective or inadequate to test the legality of his detention—a prerequisite in his case to habeas relief. *See* § 2255(e). Jones appeals; we affirm.

## I.

A jury convicted Jones of one count of making false statements to acquire a firearm and two counts of possessing a firearm as a felon. *See* 18 U.S.C. § 922(a)(6), (g)(1). Jones appealed; we affirmed. *United States v. Jones*, 266 F.3d 804, 807 (8th Cir. 2001).

Jones later filed a motion to vacate his sentence under § 2255. The district court denied his motion, but we reversed, concluding that his counsel was ineffective for not objecting to Jones's two felon-in-possession counts as duplicative. *United States v. Jones*, 403 F.3d 604, 605 (8th Cir. 2005). On remand, the district court vacated one of Jones's felon-in-possession convictions and resentenced Jones. But the court denied his requests for a new sentencing hearing, for appointed counsel, and to let him appear in court. Jones appealed; we affirmed. *United States v. Jones*, 185 F. App'x 541, 542 (8th Cir. 2006) (per curiam).

Jones has since flooded the federal dockets with unsuccessful postconviction challenges, including numerous § 2255 motions and repeated petitions to the Supreme Court for review. *See*, *e.g.*, *Jones v. Castillo*, 569 U.S. 991 (2013) (mem.), denying rehearing, 568 U.S. 1258 (2013) (mem.), denying cert., 489 F. App'x 864 (6th Cir. 2012) (per curiam). Indeed, Jones's two-decade campaign has led courts to restrict his ability to make further filings. *See, e.g.*, *In re Jones*, 572 U.S. 1086, 1086 (2014) (mem.) (noting that "[Jones] has repeatedly abused this Court's process").

Then, in 2019, the Supreme Court held that, to convict someone under § 922(g), the government must prove that the defendant knew both that he had a prohibited status and that he possessed a firearm. *Rehaif*, 139 S. Ct. at 2194. *Rehaif*

overturned our prior approach, which had not required the government to prove that the defendant knew he had a prohibited status. *United States v. Coleman*, 961 F.3d 1024, 1027 (8th Cir. 2020); *see also Jones*, 266 F.3d at 810 n.5.

Seizing on this change, Jones sought to challenge his conviction under *Rehaif*. The problem is that § 2255 is the preferred mechanism for Jones to do so. But Jones can file a "second or successive motion" under § 2255 only if it contains (i) certain "newly discovered evidence" or (ii) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2255(h)(1)-(2). Jones concedes that *Rehaif*—a new rule of statutory interpretation—does not qualify for either exception, so he cannot raise his *Rehaif* argument in a § 2255 motion. Instead, Jones filed a habeas petition under § 2241. The district court dismissed Jones's petition. Jones appeals.

## II.

We review *de novo* a district court's decision dismissing a habeas petition filed under § 2241. *Hill v. Morrison*, 349 F.3d 1089, 1091 (8th Cir. 2003).

Typically, a federal inmate "must challenge a conviction or sentence through a § 2255 motion" to vacate. *Lopez-Lopez v. Sanders*, 590 F.3d 905, 907 (8th Cir. 2010). But § 2255's saving clause creates "a narrowly-circumscribed 'safety valve.'" *United States ex rel. Perez v. Warden, FMC Rochester*, 286 F.3d 1059, 1061 (8th Cir. 2002); *see generally* "Saving Clause," *Garner's Dictionary of Legal Usage* 797 (3d ed. 2011) (noting that "saving" clause is better than "savings" clause). Under the saving clause, an inmate may file a habeas petition if he shows that "the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention." § 2255(e). If he fails to carry this burden, a court must dismiss his habeas petition for lack of subject-matter jurisdiction. *Lee v. Sanders*, 943 F.3d 1145, 1147 (8th Cir. 2019). Jones argues that he can use the saving clause and, if not, Congress has unconstitutionally suspended the writ of habeas corpus. Jones is wrong on both counts.

-3-

## A.

We first consider Jones's saving-clause argument. We have explained that it is "difficult" for a petitioner to show that § 2255's remedy is inadequate or ineffective. *Lee*, 943 F.3d at 1147; *see also Perez*, 286 F.3d at 1061-62. For example, the saving clause is unavailable "where a petitioner had any opportunity to present his claim beforehand." *Lee*, 943 F.3d at 1147. Further, a petitioner must show "more than a procedural barrier to bringing a § 2255 petition." *Hill*, 349 F.3d at 1091.

When Jones filed his first § 2255 motion, our precedent had already rejected a *Rehaif*-type argument. Now, although *Rehaif* might vindicate such an argument,[2] he cannot file a successive § 2255 motion in which to raise it. Caught in this Catch-22, Jones argues that § 2255's remedy is inadequate or ineffective.

At the outset, we have already held that being precluded from filing a successive § 2255 motion—along with other procedural barriers—does not make § 2255's remedy inadequate or ineffective. *See Hill*, 349 F.3d at 1091. Thus, without more, Jones's inability to raise his *Rehaif* argument via § 2255 now does not trigger the saving clause. The question is whether the change in caselaw, combined with the successive-motions bar, makes § 2255's remedy inadequate or ineffective.

The circuits have split over this question. Most circuits would allow a petitioner to invoke the saving clause in a case like Jones's. *See, e.g.*, *Bourgeois v. Watson*, 977 F.3d 620, 637 (7th Cir. 2020); *Hueso v. Barnhart*, 948 F.3d 324, 332-33 (6th Cir. 2020); *Harrison v. Ollison*, 519 F.3d 952, 959 (9th Cir. 2008); *In re Smith*, 285 F.3d 6, 8 (D.C. Cir. 2002); *Jiminian v. Nash*, 245 F.3d 144, 147 (2d Cir.

---

[2]Because we resolve this case on jurisdictional grounds, we do not address the merits of Jones's argument that he did not know he was a felon. *But see Jones*, 266 F.3d at 811 ("[Jones] admitted during trial that he knew he had been convicted of multiple felonies.").

2001); *Reyes-Requena v. United States*, 243 F.3d 893, 903-04 (5th Cir. 2001); *In re Jones*, 226 F.3d 328, 333-34 (4th Cir. 2000); *In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997). The Tenth Circuit and Eleventh Circuit would not. *McCarthan v. Dir. of Goodwill Industries-Suncoast, Inc.*, 851 F.3d 1076, 1080 (11th Cir. 2017) (en banc); *Prost v. Anderson*, 636 F.3d 578, 580 (10th Cir. 2011) (Gorsuch, J.). As the parties agree, we have yet to weigh in.[3] Reviewing the statutory text and our precedent, we agree with the Tenth and Eleventh Circuits.

First, "§ 2255 is not inadequate or ineffective where a petitioner had any opportunity to present his claim beforehand." *Lee*, 943 F.3d at 1147. This is because the saving clause asks whether § 2255's remedy is "inadequate or ineffective to *test* the legality of [a prisoner's] detention." § 2255(e) (emphasis added). And "to test" means "to try." *McCarthan*, 851 F.3d at 1086 (quoting 11 *Oxford English Dictionary* 220 (1st ed. 1933)). Simply, the saving clause is interested in opportunity, not outcome. *See id.* at 1086-87; *Prost*, 636 F.3d at 584.

Here, Jones could have raised his *Rehaif*-type argument either on direct appeal or in his initial § 2255 motion. Although our precedent was at that time against him, he nonetheless could have succeeded before the *en banc* court or before the Supreme Court. And, regardless, the question is whether Jones could have raised the argument, not whether he would have succeeded. *Cf. Bousley v. United States*, 523 U.S. 614, 621-23 (1998) (holding that adverse circuit precedent did not excuse a movant's obligation to raise a challenge to his guilty plea's knowingness and voluntariness on direct appeal in order to raise it under § 2255 and noting that

---

[3]Reports that we previously adopted the majority approach have been greatly exaggerated. *Cf.* 2 A. Paine, *Mark Twain, A Biography* (1912). In *Abdullah v. Hedrick*, we merely surveyed the majority approach and then held that it was inapposite to the petitioner's case. 392 F.3d 957, 960-63 (8th Cir. 2004). *But see Wright v. Spaulding*, 939 F.3d 695, 699 (6th Cir. 2019) (placing us on the majority side of the split); *Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 179-80 (3d Cir. 2017) (same); *McCarthan*, 851 F.3d at 1085 (same); *Stephens v. Herrera*, 464 F.3d 895, 898 (9th Cir. 2006) (same).

"futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time" (internal quotation marks omitted)).

For example, in *Hill*, a petitioner filed a § 2241 petition in the Eighth Circuit challenging a conviction from within the Tenth Circuit. 349 F.3d at 1090-91. A district court in the Tenth Circuit had considered drugs Hill had possessed for personal consumption when sentencing him in a drug distribution case. *Id.* at 1090. Hill did not challenge this in his appeal or initial § 2255 motion. *Id.* Subsequently, in *United States v. Asch*, 207 F.3d 1238 (10th Cir. 2000), the Tenth Circuit decided for the first time that courts could not consider such drugs when determining the statutory sentencing range. *Hill*, 349 F.3d at 1092. Citing to circuits who have adopted the majority approach, Hill argued that this subsequent change in caselaw triggered the saving clause. Brief at 9-16, *Hill v. Morrison*, 349 F.3d 1089 (8th Cir. 2003) (No. 02-2128). We "squarely reject[ed] Hill's argument," concluding that Hill could have made his claim in his first § 2255 motion and thus § 2255's remedy was not inadequate or ineffective. *Hill*, 349 F.3d at 1092. This was true even though, presumably, Hill's argument was less likely to succeed pre-*Asch* than post-*Asch*. So too here, Jones could have made his argument in his first § 2255 motion, even though it was less likely to succeed pre-*Rehaif* than post-*Rehaif*.

Second, the saving clause is triggered only if § 2255's "remedy" is inadequate or ineffective. § 2255(e). "Remedy" means "[t]he means of enforcing a right or preventing or redressing a wrong." *Black's Law Dictionary* (11th ed. 2019). Thus, "[i]t is the infirmity of the § 2255 remedy itself, not the failure to use it or prevail under it, that is determinative." *Lee*, 943 F.3d at 1147 (quoting *Prost*, 636 F.3d at 589).

Here, § 2255's remedy was itself perfectly capable of facilitating Jones's argument. Jones argues that his conviction, and thus his sentence, is illegal under federal law. Section 2255 authorizes a motion challenging a sentence "upon the ground that the sentence was imposed in violation of the . . . laws of the United States." § 2255(a). "[I]t may very well" have been the case that "*circuit law* [was]

-6-

inadequate or deficient" when Jones filed his first § 2255 motion. *Prost*, 636 F.3d at 591. "But that does not mean the § 2255 remedial vehicle is inadequate or ineffective to the task of *testing* the argument." *Id.*

Consider a more concrete example. Suppose John wants to attend a party sixty miles away that begins in one hour. His car can travel at sixty miles per hour. But the road on which he must travel has a speed limit of fifty miles per hour. Is John's car adequate and effective to get John to the party on time? Yes. Presuming John is a law-abiding citizen, will John nonetheless be late? Probably. But the problem is the law, not the car. So too here, Jones's identified problem is our now-defunct precedent, not § 2255's remedy.

We made the same point in *Perez*. There, two petitioners sought to challenge their convictions under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Perez*, 286 F.3d at 1060-61. But our precedent held that prisoners could not raise *Apprendi* claims in either initial or successive § 2255 motions. *Id.* Thus, we conceded that "a federal prisoner may never ventilate an *Apprendi* issue in a § 2255 motion." *Id.* at 1062. Still, we rejected the petitioners' argument that this made § 2255's remedy inadequate or ineffective, explaining that "it attribute[d] blame to the wrong source." *Id.* The "true impediment" was existing caselaw, "not the remedy by § 2255 motion." *Id.*

Finally, § 2255(h)(2) authorizes successive motions raising "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Jones's proposed interpretation of the saving clause would work an end run around this limitation by rewriting § 2255(h)(2) to remove the word "constitutional." *See McCarthan*, 851 F.3d at 1091; *Prost*, 636 F.3d at 591; *cf. Chazen v. Marske*, 938 F.3d 851, 863 (7th Cir. 2019) (Barrett, J., concurring) (explaining that the Seventh Circuit's contrary approach "aim[ed] to fix a 'glitch' in § 2255(h)(2)"). "[I]t is not our place to adopt a test that replaces the balance Congress reached with one of our own liking." *Prost*, 636 F.3d at 592; *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The*

*Interpretation of Legal Texts* 180 (2012) ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory.").

In sum, Jones has not shown that § 2255's remedy is inadequate or ineffective, so he cannot proceed with a habeas petition.

B.

Jones argues that because he did not have a "meaningful opportunity" to test his *Rehaif* claim and because this claim falls within "the core purposes of habeas corpus," if he cannot file a habeas petition, it "would have the effect of suspending the right of habeas corpus as to [him]."

The Constitution states that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I, § 9, cl. 2. Because "[t]he writ of habeas corpus known to the Framers was quite different from that which exists today," we must first consider whether the Suspension Clause protects the writ as it stood in 1789, or as it stands today. *See Felker v. Turpin*, 518 U.S. 651, 663 (1996).

The Supreme Court has not yet decided this question. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. ---, 140 S. Ct. 1959, 1969 n.12 (2020). That said, its precedent indicates a preference for considering the writ as it existed in 1789. It has repeatedly said that the Suspension Clause, "at a minimum, protects the writ as it existed in 1789, when the Constitution was adopted." *Id.* at 1969 (internal quotation marks omitted); *see also I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). And, although the Supreme Court has "been careful not to foreclose the possibility that the protections of the Suspension Clause have expanded along with post-1789 developments that define the present scope of the writ," it has consistently said that "the analysis may begin with precedents as of 1789." *Boumediene v. Bush*, 553 U.S. 723, 746 (2008). Further, considering that the Suspension Clause refers to a specific legal instrument that existed at the time, we think there is good reason to adhere

closely to the 1789 meaning.  *See Ex parte Watkins*, 28 U.S. (3 Pet.) 193, 201 (1830) (Marshall, C.J.) ("The term ['habeas corpus'] is used in the constitution, as one which was well understood.").

Looking to the writ as it existed in 1789, contrary to Jones's argument, his *Rehaif* claim is not within the "core purposes of habeas."  At common law, the writ's "most basic purpose" was to avoid "serious abuses of power by the government, say a king's imprisonment of an individual without referring the matter to a court." *Lonchar v. Thomas*, 517 U.S. 314, 322 (1996).  For example, five knights sought habeas relief after they had been imprisoned without a trial for refusing to lend the king money.  *Darnel's Case* (1627), 3 How. St. Tr. 1, 1-2 (KB).  Jurors did the same after they were imprisoned for returning a verdict with which the court disagreed. *Bushell's Case* (1670), 124 Eng. Rep. 1006, 1006-10 (CP).

The writ did not arise as some sort of super appeal, but to address the sort of Star Chamber shenanigans rampant before the English Civil War.  *See Edwards v. Vannoy*, 593 U.S. ---, 141 S. Ct. 1547, 1566-67 (2021) (Gorsuch, J., concurring); Habeas Corpus Act of 1641, 16 Car. 1, c. 10 (Eng.) (abolishing the Star Chamber); *cf. Clark v. United States*, 289 U.S. 1, 17 (1933) ("*Bushell's Case* was born of the fear of the Star Chamber and of the tyranny of the Stuarts.")

Indeed, "at common law, the writ of habeas corpus would not have been available at all to prisoners like [Jones]."  *See McCarthan*, 851 F.3d at 1094.  "[T]he black-letter principle of the common law was that the writ was simply not available at all to one convicted of crime by a court of competent jurisdiction." *Edwards*, 141 S. Ct. at 1563 (Thomas, J., concurring) (brackets omitted); *see also Felker*, 518 U.S. at 663; *Ex parte Siebold*, 100 U.S. 371, 375 (1879).

For example, in *Ex parte Watkins*, a prisoner argued that he had been convicted of something that was not a crime and filed a habeas petition.  28 U.S. at 201.  The Court turned to the common law to determine the scope of habeas relief. *Id.* at 201-02.  It noted that the purpose of the writ was to "inquir[e] into the cause

of commitment." *Id.* at 201. "[B]ut," the Court asked rhetorically, "if the cause of commitment be the judgment of a court of competent jurisdiction, . . . is not that judgment in itself sufficient cause?" *Id.* at 202. "A judgment, in its nature, concludes the subject," "pronounces the law of the case," and "puts an end to the inquiry concerning the fact." *Id.* at 202-03. Accordingly, the Supreme Court rejected the habeas petition, finding the judgment itself sufficient cause. *Id.* at 209 ("[W]e are unanimously of opinion that the judgment of a court of general criminal jurisdiction justifies his imprisonment, and that the writ of *habeas corpus* ought not to be awarded."). Because Jones's argument would not have warranted habeas relief as the writ was understood in 1789, we cannot agree that his inability to raise it now violates the Suspension Clause.

Further, Jones's Suspension Clause claim fails on its own terms. He rests his argument on the premise that he has not had a meaningful opportunity to raise his *Rehaif* argument. But, as discussed in Section I.A., he did. And, to the extent he is arguing that the bar on filing a successive § 2255 motion is the real problem, the Supreme Court has already rejected this argument in the analogous § 2244 context. *Felker*, 518 U.S. at 664. We see no reason to treat § 2255 differently.

In sum, Jones has not shown that his inability to seek habeas relief here violates the Suspension Clause.

## III.

For the foregoing reasons, we affirm the district court's decision dismissing Jones's habeas petition.

_____

-10-