**UNITED STATES of America, Appellee,**

v.

**Durile Lee BROWN, Appellant.**

**No. 94–3025.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1995.

Decided March 14, 1995.

Gary Bryant–Wolf, St. Paul, MN, argued, for appellant.

Nathan Petterson, Minneapolis, MN, argued, for appellee.

Before FAGG, MAGILL, and LOKEN, Circuit Judges.

MAGILL, Circuit Judge.

Durile Lee. Brown appeals his conviction for possession with intent to distribute 63 grams of crack cocaine. On appeal, Brown argues that the district court[1] erroneously denied his motion to suppress the crack as the product of an illegal search and/or arrest. Finding no error, we affirm.

## I. BACKGROUND

This case has its genesis in the arrest of one Reginald Pack. On February 9, 1992, Pack was arrested by St. Paul police officers Patrick Scott and Joseph Flaherty for possession of crack cocaine and a handgun. Apparently, Pack thought it wise to cooperate with police. Officer Michael Carter interviewed Pack, and Pack provided information concerning a gang called the 52nd Street Crips. Pack provided the name of the leader of the gang and information concerning gang activity at a specific address in Lauderdale, Minnesota. Carter had been investigating the gang for approximately one year, and he and another officer confirmed the accuracy of

1. The Honorable Donald D. Alsop, Senior United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Franklin L. Noel, United States Magistrate Judge for the District of Minnesota.

this information. Pack further stated that he was connected with the gang's narcotics distribution and agreed to cooperate in arranging a drug transaction. In Officer Carter's presence, Pack made a phone call and arranged delivery of a quantity of crack cocaine. The delivery was to occur at 6:30 p.m. that evening [2] at a Kentucky Fried Chicken (KFC) restaurant at the corner of Lexington and University Avenues in St. Paul. Pack described the person delivering the cocaine as a black male with short hair on the sides and longer hair on the top, and stated that the source would be driving a black Blazer or Bronco-type vehicle with a temporary sticker and no license plates.

Officers Scott and Flaherty took Pack to the KFC and set up surveillance in an unmarked police car. At approximately 6:35 p.m., a black Ram Charger backed into a handicapped parking space in front of the restaurant. The truck had no license plates and had a temporary sticker in the window. Pack identified the truck when it arrived. Officer Carter observed that the vehicle was occupied only by the driver, who matched the description given by Pack. After the driver remained in the truck for several minutes without going into the restaurant, the officers approached the vehicle and arrested the driver. The officers handcuffed the driver and placed him in a squad car. A search incident to arrest yielded a pager, a personal phone book and a temporary driver's license identifying the driver as Durile Brown. The officers searched the Ram Charger and discovered papers relating to the truck, a wire transfer receipt and 63 grams of crack cocaine.[3]

Brown was charged by complaint on February 11, 1992, with possession with intent to distribute crack cocaine. He was released on bond, and subsequently absconded. On March 4, 1992, he was indicted on the same charge. Brown was arrested in January 1994, and a superseding indictment was returned adding a charge of failure to appear. On March 23, 1994, a suppression hearing was held before United States Magistrate Judge Franklin L. Noel. Magistrate Judge Noel issued a report and recommendation that the motion to suppress be denied, which the district court adopted. A two-day jury trial was held, and Brown was convicted of the drug charge. (The failure to appear charge was severed and later dismissed.) Brown filed a motion to reopen the suppression hearing based on newly discovered evidence produced at trial. The district court granted the motion, and at a second suppression hearing, Pack, who now faced a prison sentence, denied having ever cooperated with police. The renewed motion to suppress was denied and Brown was sentenced to 151 months imprisonment. Brown timely appealed.

## II. DISCUSSION

■ The parties agree that Brown was arrested when he was removed from his vehicle, and that any probable cause for the arrest was based upon information provided by Pack and observations by the St. Paul police. Thus, this appeal distills to two issues: whether probable cause existed at the time of (1) Brown's arrest, and (2) the search of Brown's vehicle. Despite the parties' assertions to the contrary, we review the district court's factual findings regarding what the parties did or said for clear error and we review the district court's conclusion that the Fourth Amendment was not violated de

---

**2.** Although several hours passed between the time of the phone call and the time of the delivery, the police obtained neither a search nor an arrest warrant. We note that a more prudent procedure would have been to obtain a conditional "anticipatory" search warrant. *See United States v. Koelling*, 992 F.2d 817, 823–24 (8th Cir.1993); *United States v. Tagbering*, 985 F.2d 946, 949–50 (8th Cir.1993); Wayne R. LaFave, *Search and Seizure* § 3.7(c) (1987 & Supp.1995).

**3.** Brown characterizes the actions by the police as three separate searches. While such an approach is analytically useful in cases involving searches and/or seizures of escalating magnitude, *see, e.g., United States v. Bloomfield*, 40 F.3d 910 (8th Cir.1994) (en banc) (examining initial stop for pretext, then examining *Terry* stop to determine whether de facto arrest occurred), we do not find this approach to be helpful in a case, such as this, that involves no escalation of the

novo.[4] *United States v. Dawdy,* 46 F.3d 1427, 1429–1430 (8th Cir.1995); *United States v. White,* 42 F.3d 457, 460 (8th Cir. 1994); *United States v. Bloomfield,* 40 F.3d 910, 918 (8th Cir.1994) (en banc).

### A. Brown's arrest was supported by probable cause.

Probable cause for a warrantless arrest exists "if the facts and circumstances within the law enforcement officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. Morales,* 923 F.2d 621, 623 (8th Cir.1991) (internal quotations, modifications and citations omitted). The probable cause determination does not depend upon individual facts; rather "it depends on the cumulative effect of the facts in the totality of the circumstances." *Id.* at 623–24 (internal quotations, modifications and citations omitted).

A key issue in determining whether information provided by an informant is sufficient to establish probable cause is whether that information is reliable. An informant may establish the reliability of his information by establishing a track record of providing accurate information. *Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). However, where a previously unknown informant provides information, the informant's lack of a track record requires "some independent verification" to establish the reliability of the information. *United States v. Robertson,* 39 F.3d 891, 893 (8th Cir.1994). Independent verification occurs when the information (or aspects of it) is corroborated by the independent observations of police officers. *Gates,* 462 U.S. at 241–45, 103 S.Ct. at 2333–36. *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); *Morales,* 923 F.2d at 625. Thus, we turn our attention to whether any aspects of Pack's information were corroborated.

Pack's information was partly descriptive (concerning gang activity) and partly predictive (concerning the crack delivery). Corroboration is especially valuable in establishing the reliability of an informant's tip when predictive elements of the tip are corroborated. *Id.* at 624–25. After arranging the transaction, Pack predicted both the time of delivery (at 6:30 p.m. that evening) and the place of delivery (at a KFC restaurant at the corner of Lexington and University). Pack described the person who was to deliver the cocaine and described the vehicle he would be driving. These elements were confirmed when police observed a black male with short hair on the sides and longer hair on the top driving a black Ram Charger with no license plates and a temporary sticker enter the KFC parking lot at approximately 6:35 p.m. Moreover, upon his arrival, the driver of the Ram Charger acted in a manner that was consistent with the clandestine rendezvous predicted by Pack. In sum, several aspects of Pack's prediction were corroborated by the independent observations of police officers. The value of Pack's information is not diminished merely because the corroborated elements involve "innocent" behavior. *Id.* at 625. Rather, the fact that Pack proved correct in certain aspects of his prediction (the innocent behavior) increases the probability that other aspects of his prediction (the criminal behavior) are also correct. *Gates,* 462 U.S. at 244–45, 103 S.Ct. at 2335–36, *United States v. Edmiston,* 46 F.3d 786, 788–89 (8th Cir.1995).

The reliability of Pack's information was further enhanced by the fact that his descriptive information contained factual details that were not easily discovered. *See Gates,* 462 U.S. at 245, 103 S.Ct. at 12335. Pack provided accurate information concerning the name of a street gang, the name of the leader of the gang, and a description of gang activities at a specific address. Pack also provided accurate and detailed information about the arranged crack delivery. In sum, Pack's accurate description of gang activity combined with the corroboration of numerous aspects

degree of intrusion upon Brown's privacy as among the three purportedly distinct searches.

4. We apply Fourth Amendment analysis to this appeal and disregard Minnesota law. *United States v. Maholy,* 1 F.3d 718, 721 (8th Cir.1993).

of his prediction was "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that [Brown] has committed, is committing, or is about to commit an offense." *Morales*, 923 F.2d at 623. Accordingly, we hold that Brown's arrest was supported by probable cause and therefore did not violate the Fourth Amendment.

### B. The search of Brown's vehicle was supported by probable cause.

 Although under the "automobile exception" a search of a vehicle does not require a warrant, the search must be supported by probable cause.[5] *United States v. Horne*, 4 F.3d 579, 589 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1121, 127 L.Ed.2d 430 (1994). Probable cause to search a vehicle exists where there is a "fair probability that contraband or evidence of a crime will be found" in that vehicle. *Robertson*, 39 F.3d at 892; *Horne*, 4 F.3d at 589. The totality of the circumstances approach that applies probable cause to arrest also applies to probable cause to search. *Robertson*, 39 F.3d at 893. Brown argues that the failure of police to immediately discover incriminating evidence during the initial phases of their search of his Ram Charger dissipated any probable cause. This argument is meritless.

The facts that create probable cause to arrest Brown for cocaine possession create with equal force probable cause to believe that the Ram Charger contained crack cocaine. Brown drove the vehicle to the KFC for the express purpose of delivering the cocaine to Pack. Moreover, a search incident to Brown's arrest yielded a pager and a personal phone book. The initial stages of the search of the vehicle also generated a wire transfer receipt. These discoveries were completely consistent with the information provided by Pack. Moreover, we have previously noted that pagers are tools of the drug trade, *Bloomfield*, 40 F.3d at 919, and a receipt for a wire money transfer, while not necessarily a tool of the drug trade, is hardly

exculpatory. These facts were more than sufficient to establish probable cause to search the Ram Charger. Accordingly, we hold that the warrantless search of Brown's Ram Charger did not violate the Fourth Amendment.

### III. CONCLUSION

Because we conclude that neither Brown's arrest nor the search of his Ram Charger violated the Fourth Amendment, we affirm the district court's denial of Brown's motion to suppress.

---

5. We do not reach the government's argument that the search was permissible as a search incident to arrest.