# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2233

_____

United States of America,           *
                                    *
      Plaintiff - Appellee,        *
                                    *   Appeal from the United States
   v.                              *   District Court for the
                                    *   District of Nebraska.
Damien Wells,                       *
                                    *
      Defendant - Appellant.       *

_____

Submitted:  January 14, 2003

Filed:  October 17, 2003

_____

Before BOWMAN, RICHARD S. ARNOLD, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Damion[1] Wells appeals his conviction for possession of crack cocaine with intent to distribute in violation of 21 U.S.C. § 841. He does so making four arguments, none of which are compelling. We therefore affirm the decision of the district court.[2]

_____

[1]Although the caption spells the defendant's name "Damien," both parties spell the name "Damion." We will follow the latter example.

[2]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

# I

On February 16, 2001, the Bureau of Alcohol, Tobacco and Firearms (ATF) and the Omaha City Police Department undertook a joint investigation on a tip. A confidential informant revealed he had purchased crack cocaine from someone he knew as "Fat Boy," described as a portly African-American.

The informant explained that, to purchase crack cocaine, he contacted "Fat Boy" by calling a pager number. He would leave his phone number followed by the dollar amount of crack cocaine he wanted to purchase. For example, to buy one-half ounce, which sold for $500.00, the informant would leave his number followed by "500."

Law enforcement subpoenaed the subscriber information for "Fat Boy's" pager. The information revealed "Fat Boy" was Wells and listed 2022 North 40th Street in Omaha as his residence. Acting on this information, law enforcement officers reviewed Douglas County records and learned that Wells had a criminal history consisting of two felony convictions for crack possession and one for robbery and that Wells's registration of his Buick LeSabre listed the 40th Street address as his residence. Moreover, a photograph of Wells, found in the police file, was shown to the informant, who confirmed Wells was the man he knew as "Fat Boy."

On April 13, 2001, investigators met with the informant who, at their request, called Wells's pager and left his number and a coded order to purchase one-half ounce of crack cocaine. Wells called back from a residential phone line at 3643 Charles Street. The informant told Wells he wanted to meet in forty-five minutes. Wells responded the informant should call back when ready.

Surveillance teams were deployed to both 3643 Charles Street and 2022 North 40th Street. Wells left the former and drove his Buick LeSabre to and entered the latter. The informant then again paged Wells, and Wells called back. The two agreed upon a meeting time and place. Wells was then observed leaving his front door, disappearing into the back yard, and returning to the Buick. He was followed by investigators as he drove to the arranged meeting place.

There, Wells and the informant pulled their vehicles next to each other and then drove to a second location. Once at this location, the informant got into Wells's vehicle and allegedly purchased one-half ounce of crack cocaine from him. Wells then returned to the Charles Street residence.

On April 18, 2001, law enforcement again established surveillance on both residences. The informant, at the request of law enforcement, again paged Wells and left a coded request to purchase one ounce of crack cocaine. The sale was allegedly consummated in a similar manner as on the 13th. Wells was observed driving from the Charles Street address to the North 40th Street residence, where he again went behind the house and out of sight before driving to the meeting place to make the alleged delivery.

Law enforcement submitted an affidavit and applications for two search warrants on April 20, 2001. The first warrant requested permission to search 2022 North 40th Street, the Buick, and Wells himself. The second warrant requested permission to search the Charles Street residence. Both warrants were granted by a Douglas County judge.

Warrants in hand, law enforcement once more pressed the informant into service. The informant paged Wells and was directed to leave a coded request to purchase two ounces of crack cocaine, which sold for $1,600.00. Wells returned the call and apparently told the informant he would call back shortly. Wells, who was

-3-

wearing a red ball cap and red shirt, was then observed leaving the Charles Street residence where he had taken the informant's call and driving to the North 40th Street residence where he was paged a second time by the informant. Wells answered this page and again told the informant he would call back, which he did after just a few minutes. The two arranged to meet in a certain Walgreens's parking lot, but first Wells returned to the Charles street address.

Investigators decided not to travel with the informant to the Walgreens until they received confirmation from the surveillance team that Wells was en route. The surveillance team at the Charles street address watched a blue-green Grand Am drive away from the residence, while the Buick remained in the driveway. Officers were dispatched to the area near the Walgreens and spotted the Grand Am. Suspecting Wells was within, they stopped it.

Wells was indeed in the vehicle. The officers arrested him, searched the vehicle's passenger compartment, and discovered two ounces of crack cocaine. Subsequently, the search warrants were executed on the two residences. A handgun was discovered at the Charles Street address. A storage unit behind the North 40th Street residence was unlocked with a key taken from Wells, and 1.5 ounces of crack cocaine were discovered.

Wells was charged with three counts of possession of cocaine base (crack) with intent to distribute in violation of 21 U.S.C. § 841 for his conduct on April 13, 18 and 20, respectively. Additionally, he was charged with one count of conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846.

The matter went to trial, but the confidential informant refused to testify and was held in civil contempt. A jury acquitted Wells of the conspiracy charge and the two possession counts stemming from his conduct on April 13 and 18. The third

possession charge, stemming from his conduct on April 20, resulted in a hung jury, and the district court ultimately declared a mistrial on that count.

At a second trial, Wells was convicted of possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841 for his conduct on April 20, and he was sentenced to a term of 240 months in prison. He appeals.

II

Because he was acquitted of the two possession counts stemming from his conduct on April 13 and 18, Wells contends the government violated the Double Jeopardy Clause at the second trial by introducing evidence regarding the events of those dates. Reviewing this claim de novo, United States v. Jones, 266 F.3d 804, 813 (8th Cir. 2001), we disagree.

In Prince v. A.L. Lochart, we explained:

The Double Jeopardy Clause incorporates the doctrine of collateral estoppel. The collateral estoppel doctrine provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." [Ashe v. Swenson, 397 U.S. 436, 443 (1970)]. A fact previously determined in a criminal case is not an "ultimate fact" unless it was necessarily determined by the jury against the government and, in the second prosecution, that same fact is required to be proved beyond a reasonable doubt in order to convict. See [Dowling v. United States, 493 U.S. 342, 349-52 (1990)].

971 F.2d 118, 123 (8th Cir. 1992).

Wells's prior acquittal did not determine an ultimate fact in the present case. Whether Wells possessed cocaine base with intent to distribute on April 13 and 18

-5-

need not be answered in the present case. The government was not required to show beyond a reasonable doubt that Wells possessed drugs on either of those dates in order to convict him of possession of cocaine base with the intent to distribute on April 20. Therefore, the government's introduction of testimony regarding April 13 and 18 was not collaterally estopped due to the Double Jeopardy Clause.

III

In the alternative, Wells argues that, if this testimony was admissible pursuant to Federal Rule of Evidence 404(b), then the district court should have instructed the jury that he had been acquitted of the prior two counts stemming from the conduct testified to. We disagree.

Wells moved for a limiting jury instruction, and the district court denied the motion. We therefore review the district court's decision for abuse of discretion. Jones, 266 F.3d at 814.

As we explained in Prince v. A.L. Lochart:

> The general rule is that although a judgment of acquittal is relevant with respect to the issues of double jeopardy and collateral estoppel, "once it is determined that these pleas in bar have been rejected, a judgment of acquittal is not usually admissible to rebut inferences that may be drawn from the evidence that was admitted."

971 F.2d at 122 (quoting United States v. Kerley, 643 F.2d 299, 300 (5th Cir. 1981)).

> There are two primary reasons why a judgment of acquittal is not generally admissible to rebut inferences that may be drawn from evidence that was the basis of a previous trial. First, judgments of acquittal are hearsay. Second, judgments of acquittal are not generally relevant, because they do not prove innocence; they simply show that

the government did not meet its burden of proving guilt beyond a reasonable doubt.

Id. (citations omitted).

The fact the government was unable to prove Wells possessed crack with the intent to distribute on April 13 or 18 is not relevant to whether or not Wells did so on April 20.  Therefore, we see no abuse of discretion in the district court's refusal to provide a limiting instruction.

IV

Wells contends the district court erred in denying his motion to suppress evidence discovered in the search of 2202 North 40th Street.  He argues that the supporting affidavit was insufficient to establish probable cause upon which a warrant may issue.  We disagree.  "A district court's denial of a motion to suppress must be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made."  United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995) (internal citation and quotations omitted).

When, as here, the issuing court relies solely on an affidavit to determine whether probable cause exits, only the information "found within the four corners of the affidavit may be considered."  Id. (internal citation and quotation omitted). Upon reviewing the affidavit, we are confident the district court did not err in denying the motion to suppress evidence discovered in the search.  The affidavit sets forth the circumstances of the first two alleged controlled buys, law enforcement's discovery of various pieces of information connecting Wells to the address (e.g., pager records, car registration, etc), and the observations of Wells's behavior at 2202 North 40th Street before the alleged controlled buys.  Taken together, these facts lead us to

believe, as the district court found, that the state court correctly determined the affidavit supported the issuance of the search warrant.

V

Wells also contends the evidence discovered during the search of the Grand Am should have been suppressed. Because he was a passenger in the car, he now argues law enforcement was required to apply for a warrant to search the vehicle or obtain consent to search from the driver. The government replies the Grand Am was lawfully searched incident to an arrest. We review the district court's factual findings for clear error and its conclusion as to whether the search violated the Fourth Amendment de novo. United States v. Hogan, 25 F.3d 690, 692 (8th Cir. 1994). Doing so, we reject Wells's arguments, but harbor doubts about the government's arguments as well.

The Grand Am was stopped; Wells was arrested. Once he was arrested, law enforcement was authorized to conduct a search incident to the arrest. New York v. Belton, 453 U.S. 454, 460 (1981) (holding "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile"). Such a search, however, must be contemporaneous to the arrest. The government's brief raises doubt about whether the search was contemporaneous, for it quotes the arresting officer as saying:

> I went to the passenger door, opened the door from the outside. I asked Mr. Wells to step out. I believe I took control of one of his arms on the way out and handcuffed him. I drove the blue Pontiac four door that Mr. Wells was in to the northeast precinct to do an inventory search and to impound the vehicle . . . . It was going to be impounded and it's the standard procedure to search. Also, Mr. Wells was under arrest at the

-8-

time for marijuana that was found on his person.  Subsequent to his arrest the vehicle was searched.

Appellee's Brief at 20-21(citation to trial transcript omitted).

Because these facts can be read to imply the search did not follow hard upon the heels of the arrest, we are unwilling to sanction the search as one incident to a lawful arrest.  As is so often the case in the search and seizure context, however, this proves a hollow victory for the defendant (even if a meaningful one for society), for here the search is justified by yet another exception to the warrant requirement of the Fourth Amendment.  "It is a well-settled principle that we may affirm a district court's judgment on any basis supported by the record."  United States v. Pierson, 219 F.3d 803, 807 (8th Cir. 2000).

The warrantless search of a vehicle is constitutional pursuant to the "automobile exception" to the warrant requirement, if law enforcement had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began.  United States v. Riedesel, 987 F.2d 1383, 1389 (8th Cir. 1993) (reiterating that, pursuant to the "automobile exception" a vehicle may be searched without a warrant if there is probable cause); see also Carroll v. United States, 267 U.S. 132, 158-59 (1925) (creating the exception).

"Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."  United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000).  "[P]robable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication."  United States v. Horne, 4 F.3d 579, 585 (8th Cir. 1993).  "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the

object of the search." United States v. Ross, 456 U.S. 798, 825 (1982). "[W]hen police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." Michigan v. Thomas, 458 U.S. 259, 261 (1982) (per curiam).

On appeal Wells does not contest the presence of probable cause for his arrest. Yet the facts that support an arrest may also support an automobile search. United States v. Brown, 49 F.3d 1346, 1350 (8th Cir. 1995). As in Brown, where we found there was probable cause to search a vehicle, here too law enforcement had reason to believe Wells had traveled to the meeting point to sell cocaine. Id. His conduct paralleled that of the two previous controlled buys. Cf. United States v. Czeck, 105 F.3d 1235, 1238 (8th Cir. 1997) ("Czeck concedes that the officers had probable cause to arrest him on the basis of two controlled buys."). On both past occasions, as on April 20, Wells first left the Charles Street address, went to the North 40th street address, and disappeared into the back yard. These facts taken together lead us to believe law enforcement had probable cause to search the vehicle Wells was a passenger in. But see United States v. Hogan, 25 F.3d 690, 693 (8th Cir. 1994) (concluding that, because the defendant was suspected of trafficking drugs in his truck to his workplace, there was no probable cause to stop and search his car as he traveled someplace other than work.) We hold, therefore, that the police had probable cause to believe the car had evidence of a crime when it executed the search.

VI

The district court admitted into evidence five tape-recorded conversations between Wells and the confidential informant. Wells argues it was error to admit these recordings because the identities of the speakers were not established. Reviewing the district court's decision for abuse of discretion, United States v. Roach, 28 F.3d 729, 732 (8th Cir. 1994), we disagree.

The requirements for admitting tape-recorded information into evidence were set forth in United States v. McMillan, 508 F.2d 101, 103 (8th Cir. 1974). One of the requirements is that the speakers be identified. Id. Here, the government called two witnesses to make the required identifications. The first was a government agent who had worked with the confidential informant and testified he recognized the informant's voice on each of the tapes. The second witness was a friend of Wells, Oriana Fellows. In fact, Fellows had been driving the Grand Am the night of Wells's arrest. Fellows testified she recognized Wells's voice on each of the tapes.

Wells concedes Fellows testified *one* of the voices on the tapes played to her was Wells's. Brief of Appellant at 16. Wells argues, however, that "Fellows never directly identified Damion Wells as the person to whom the confidential informant was talking." Id. This distinction makes no difference. After the witnesses testified, the identity of the speakers was clear. The district court did not exceed its discretion by allowing the tape-recordings into evidence.

VII

Wells makes the related argument that under the McMillan standard the numbers read in court from his pager and from Fellows's phone are inadmissible. The government agrees the McMillan standard controls but argues it is met. On this point, too, we review the district court's decision for abuse of discretion, Roach, 28 F.3d at 732, and on this point, too, we disagree with Wells.

As a preliminary note, neither Wells nor the government cite, nor has independent research revealed, a case which stands for the proposition that the McMillan foundational test for tape-recorded information applies to digitally stored numbers on pagers or cell phones. Moreover, a reading of the factors of the test makes us doubt they govern this situation.

The McMillan factors are instructive here, however.  In McMillan we held:

> The use of evidence obtained by electronic monitoring is not limited to corroboration of the testimony of the informant. There must be a proper foundation for the introduction of the evidence. Those requirements include a showing: (1) That the recording device was capable of taking the conversation now offered in evidence; (2) That the operator of the device was competent to operate the device; (3) That the recording is authentic and correct; (4) That changes, additions or deletions have not been made in the recording; (5) That the recording has been preserved in a manner that is shown to the court; (6) That the speakers are identified; and (7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

508 F.2d at 103.

Here, that the numbers were recorded is sufficient to establish the pager and cell phone were capable of recording numbers.  Cf.  United States v. McCowan, 706 F.2d 863, 865 (8th Cir. 1983) (per curiam) ("The very fact that the tape recordings exist establishes that the recording device was capable of picking up sounds and taking the conversation offered.").  Additionally, an officer testified he knew how to use both pagers and cell phones, and specifically how to access numbers stored in them.  He demonstrated this knowledge by operating both to reveal the stored numbers, which he then read to the court and jury.  Further, there was nothing to make the court suspect law enforcement improperly maintained, tampered, or altered the information stored on the devices.  Cf. Roach, 28 F.3d at 733 (noting "when foundational objections are made regarding the pre-trial custody and maintenance of a tape, the District Court is entitled, absent proof to the contrary, to assume that the investigators properly maintained the tape and did not tamper with it.").  As we consider these facts and read McMillan, we are not convinced the district court exceeded its discretion in allowing the numbers from the pager and cell phone memory banks to be read into the record.

## VIII

The confidential informant who allegedly purchased crack from Wells refused to testify at trial. The government, therefore, asked the law enforcement officer who had worked with the informant to explain what the officer asked the informant to do and what he saw the informant do. Wells argues that by doing so the government elicited hearsay testimony and denied him his right to confront witnesses arrayed against him, thereby violating the Confrontation Clause of the Sixth Amendment. We disagree.

Wells directs our attention to United States v. Check, in which a confidential informant who served as an intermediary between the defendant and the investigating officer refused to testify. 582 F.2d 668, 670 (2nd Cir. 1978). The government called the investigator, who for the most part had not spoken directly with the defendant. Id. The prosecutor asked "[w]ithout telling us what Mr. Cali said to you, what did you say to him?" Id. at 671. The investigator's responses, however, clearly communicated what the informant said to the investigator about the defendant. Id. at 678. As the court explained "for much of his testimony [the investigator] was serving as a transparent conduit for the introduction of inadmissible hearsay information obviously supplied by and emanating from the informant." Id. Here, in contrast, the officer's testimony was limited to his observations of the informant's conduct and his own unilateral instructions to the informant.

Even if we did believe there was hearsay in this case, it would not warrant reversal. "A violation of the Confrontation Clause is subject to harmless error analysis." Barrett v. Acevedo, 169 F.3d 1155, 1164 (8th Cir. 1999). "When the evidence of a defendant's guilt is overwhelming, appellate courts have held that violations of the confrontation clause by the admission of hearsay statements are harmless beyond a reasonable doubt." United States v. Williams, 181 F.3d 945, 952 (8th Cir. 1999). This is such a case. Wells was convicted of possessing with intent

-13-

to distribute fifty grams, or more, of crack cocaine. Upon Wells's arrest, the vehicle he was riding in was searched and two ounces (approximately fifty-six grams) of crack was discovered. Another one and one-half ounces of crack were discovered during the search of the storage unit behind Wells's home. Additionally, a firearm was discovered at the house and a pager was discovered on Wells's person. Moreover, at trial an officer testified he saw the informant page Wells, and five incriminating taped conversations between Wells and the informant were played to the jury. These facts together support Wells's conviction even without the officer's testimony regarding what he and the informant discussed.

IX

Accordingly, the judgment of the district court is affirmed.

_____