# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2237
_____

United States of America

*Plaintiff - Appellee*

v.

Damon O'Neil

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport
_____

Submitted: December 12, 2012
Filed: January 15, 2013 [Substituted February 20, 2014]
_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.
_____

PER CURIAM.

Damon O'Neil was found guilty by a jury of conspiracy to distribute at least twenty-eight grams of crack cocaine. Because of his prior drug convictions, the district court[1] sentenced O'Neil to mandatory life imprisonment. O'Neil now

---

[1] The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

challenges his life sentence and the sufficiency of the evidence against him. We affirm.

I

Damon O'Neil was released from prison on drug-related charges in 2008 and subsequently settled in Chicago, Illinois. In Chicago, O'Neil began distributing marijuana and transitioned into distribution of cocaine base. In the spring of 2010, O'Neil and his wife Melissa Taylor moved to Davenport, Iowa. In Davenport, O'Neil continued distributing cocaine and formed a network of lower-level drug distributors. O'Neil made weekly trips to Chicago to obtain large quantities of cocaine base, transported them back to Davenport, and then repackaged them into distribution quantities or "bundles." O'Neil distributed these bundles to his workers and collected payment for them from the workers' sales. Occasionally, O'Neil enlisted his wife and her niece, Aaren Verrett, to assist with his operation (e.g., picking up cocaine from Chicago or collecting money from the workers). Although O'Neil did not maintain steady employment in Davenport, his wife often observed him with large sums of cash and O'Neil provided money to cover all of the household bills.

Davenport Police became aware of O'Neil's activities during an interview with Randy Libby, one of O'Neil's distributors. On January 15, 2011, Libby and the Davenport Police conducted a controlled purchase of cocaine base from Verrett outside of O'Neil's home. After the buy, police officers obtained a search warrant for the residence. On January 25, 2011, police officers executed the warrant and seized 32.6 grams of cocaine base, cocaine powder, and a digital scale from O'Neil's home. O'Neil was arrested.

After his arrest, O'Neil confessed to Officer Brandon Koepke of the Davenport Police to distributing cocaine base. O'Neil admitted that since May 2010, he had made between twenty and thirty trips to Chicago to obtain cocaine base and averaged

-2-

$6,000 per week in income from the sale of the cocaine. He told Officer Koepke that he purchased 126 grams of cocaine base per trip (two 63-gram packs), for a total of 2.5 kilograms of cocaine base since his move to Davenport. Officer Koepke testified as to O'Neil's confession at trial but admitted he had not recorded their conversation.

At trial, the government also presented the testimony of one of O'Neil's cell mates. The cell mate testified that O'Neil had made several incriminating statements to him in which O'Neil admitted to cocaine distribution, maintaining a network of workers, and earning between $2,000 and $10,000 per day. The cell mate further testified that O'Neil had moved to Iowa because he believed there was more money to be made there. At the time, the cell mate faced a fifteen-year sentence for drug-related charges and admitted on cross-examination that his cooperation with the government was necessary to reduce his minimum sentence.

Finally, the government presented the testimony of various expert witnesses. Detective Koepke testified that the cocaine base seized from O'Neil's house had been packaged for redistribution. Sergeant Smull testified that O'Neil's purchase of cocaine in sixty-three-gram quantities was not consistent with personal use but indicative of redistribution. And Special Agent Allers testified that he had analyzed O'Neil's phone records and concluded O'Neil had made approximately 14,000 phone calls and sent 28,000 text messages since moving to Davenport—figures consistent with a cocaine base dealer who is involved in numerous sales of cocaine base.

O'Neil testified on his own behalf. He told the jury he had left Chicago because of gangs and moved to Davenport to open a computer repair business. He denied any knowledge or possession of crack cocaine in his home. He also denied the truthfulness of the government's witnesses. On cross examination, O'Neil denied making any incriminating statements to Davenport Police.

-3-

The jury found O'Neil guilty of conspiring to distribute at least 28 grams of cocaine base but less than 280 grams of cocaine base. At sentencing, the district court determined O'Neil was responsible for distributing 2.5 kilograms of cocaine base. The court based this finding on the evidence presented at trial regarding O'Neil's weekly trips to Chicago and the amount of cocaine base he obtained on each trip. Because O'Neil has two prior drug convictions, the court imposed a mandatory sentence of life imprisonment. O'Neil now appeals his life sentence and challenges the sufficiency of the evidence against him.[2]

## II

This Court reviews a district court's legal conclusions de novo. United States v. Foster, 514 F.3d 821, 824 (8th Cir. 2008). We review questions of sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict. United States v. Moe, 536 F.3d 825, 832 (8th Cir. 2008). "When reviewing the sufficiency of the evidence to support a conspiracy conviction, we will affirm if the record, viewed most favorably to the government, contains substantial evidence supporting the jury's verdict, which means evidence sufficient to prove the elements of the crime beyond a reasonable doubt." United States v. Lopez, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc) (citations omitted).

## III

We first address the sufficiency of the evidence against O'Neil. To convict O'Neil of conspiracy to distribute cocaine base, the government was required to prove (1) O'Neil and at least one other person reached an agreement to distribute or possess

---

[2]In support of his appeal, O'Neil filed a motion for leave to file a pro se supplemental brief. O'Neil's motion is hereby granted, and we take his brief into due consideration in forming our judgment of this case.

-4-

with intent to distribute cocaine, (2) O'Neil voluntarily and intentionally joined the agreement, and (3) at the time that he joined the agreement, O'Neil knew its essential purpose. United States v. Harris, 493 F.3d 928, 931 (8th Cir. 2007). Given this framework, we find there was sufficient evidence to support O'Neil's conviction for conspiracy to distribute cocaine base.

Because O'Neil provides no indication as to which element(s) remain unproved or what evidence should be discredited, we review this claim generally. The jury heard testimony from O'Neil's wife and niece that he enlisted their help in facilitating his drug trafficking operation on numerous occasions. It heard expert testimony characterizing the amount and packaging of the cocaine found in O'Neil's home as consistent with an intent to redistribute. And it heard evidence of O'Neil's own confessions to Davenport Police and his cell mate regarding his participation in the operation. Under the circumstances, O'Neil's own testimony that he played no role in the distribution of cocaine base is insufficient to overturn the jury's conviction.

We turn now to the propriety of O'Neil's life sentence. O'Neil was charged by indictment with conspiracy to distribute at least 280 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). The associated penalty is a term of imprisonment from ten years to life. At trial, however, the jury convicted O'Neil of an offense involving more than 28 grams but less than 280 grams of cocaine base. O'Neil was thus convicted of a violation of 21 U.S.C. § 841(b)(1)(B), which carries the lesser penalty of five to forty years of imprisonment. O'Neil argues the jury's verdict therefore caps his maximum sentence at forty years.

Section 841(b)(1)(B) notes, however, that "[i]f any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment . . . not more than life imprisonment." O'Neil's argument is thus untenable. Because of his prior convictions, O'Neil faced a maximum life sentence regardless of which amount of

-5-

cocaine was attributed to him.  See 21 U.S.C. § 841(b)(1)(A) (imposing a minimum life imprisonment term for defendants, with prior felony drug convictions, who are convicted of an offense involving 280 grams or more of cocaine base); 21 U.S.C. § 841(b)(1)(B) (imposing a maximum life imprisonment term for defendants, with prior felony drug convictions, who are convicted of an offense involving 28 grams or more of cocaine base).

This Court has held "a district court may impose a sentence based on a drug quantity determination greater than that found by the jury so long as the sentence does not exceed the statutory maximum of the convicted offense and the district court's calculation is supported by sufficient evidence."  United States v. Webb, 545 F.3d 673, 677 (8th Cir. 2008).  Because O'Neil faced a statutory maximum term of life imprisonment under § 841(b)(1)(B) and the court's calculation was supported by sufficient evidence (as discussed above), the district court did not err in sentencing O'Neil to life imprisonment upon its own finding that he conspired to distribute over 280 grams of cocaine base in violation of § 841(b)(1)(A).

We therefore affirm.

————————————————————

-6-