# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1422
_____

Damon O'Neil

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: January 16, 2020
Filed: July 20, 2020
_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.
_____

SMITH, Chief Judge.

A jury convicted Damon O'Neil of conspiracy to distribute cocaine. *See* 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(B), 846, 851. We affirmed that conviction.[1] In this

_____

[1]The district court originally sentenced O'Neil to life imprisonment, and we affirmed his conviction and sentence. *See United States v. O'Neil*, 496 F. App'x 694,

appeal, he asks us to vacate, set aside, or correct his sentence because his counsel was ineffective. *See* 28 U.S.C. § 2255. We conclude his counsel was not ineffective and affirm the district court.[2]

## I. *Background*

In January 2011, a confidential informant told law enforcement that he knew of a female named "Aaren" and a man known as "D" selling drugs out of a specific apartment. The apartment's utilities were registered to Melissa Taylor. The officers set up a controlled buy and had the confidential informant purchase drugs from Aaren. The officers observed a female come from behind the apartment building, make the transaction, and return to the specified apartment. The confidential informant confirmed that the seller was Aaren.

A detective then applied for a search warrant. In the application's affidavit, he substituted Taylor's name for Aaren's. The detective testified that he did so because he did not have a last name for Aaren and assumed Taylor was using a fake name for drug sales. In reality, the two names identified different women. As a result of the switch, the affidavit stated that the confidential informant told police that Taylor operated the distribution center at the apartment and that Taylor sold the drugs during the controlled buy.

---

695 (8th Cir. 2013) (per curiam). The Supreme Court vacated O'Neil's conviction in light of *Alleyne v. United States*, 570 U.S. 99 (2013). *See O'Neil v. United States*, 571 U.S. 801 (2013). After remanding, we again affirmed his conviction and the new 180-month sentence. *See United States v. O'Neil*, 595 F. App'x 665, 666 (8th Cir. 2015) (per curiam).

[2]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

A magistrate judge issued a search warrant for the apartment, which authorized the search of Taylor's phones. During its execution, officers searched two phones that actually belonged to O'Neil. Officers obtained these phones' numbers by calling dispatch, which has caller ID, and received the owner's name and cell phone records from the service provider. The officers also found cocaine base, cash, and a digital scale in the apartment.

O'Neil, who was in the apartment at the time of the search, was arrested and later questioned by police. An officer testified that O'Neil admitted he was a crack dealer and described his operation in detail. At trial, O'Neil testified that he never confessed. O'Neil now claims that he did not waive his *Miranda* rights and that the police questioned him after he asked for an attorney.

O'Neil was convicted of conspiracy to distribute cocaine. After his initial sentence was vacated in light of *Alleyne*, we affirmed the 180-month sentence he received on remand. *See O'Neil*, 595 F. App'x at 665–66. O'Neil then filed this § 2255 habeas petition. *See* 28 U.S.C. § 2255. He raised seven ineffective-assistance-of-counsel claims.

First, O'Neil asserted that his counsel should have requested a *Franks* hearing[3] because the affiant switched Aaren's name with Taylor's. The district court found that the switch constituted a recklessly made false statement. But even with the identifying information omitted, the court found that the remaining allegations—which described the participant of a controlled buy leaving the apartment area, making the purchase, and returning to the specified apartment—created probable cause that criminal evidence was in the apartment. Therefore, the court concluded that any request for a *Franks* hearing would have been meritless, and thus O'Neil's trial counsel was not ineffective.

---

[3] *See Franks v. Delaware*, 438 U.S. 154 (1978).

Second, O'Neil argued that his counsel erred by not contesting the validity of the search warrant. First, he pointed out the magistrate judge's failure to indicate why he found the informant reliable. The court determined that such technical errors could not render the warrant invalid. Alternatively, O'Neil claimed that the single controlled buy described in the affidavit was not enough to establish probable cause. The court disagreed. Because both arguments lacked merit, the court held that O'Neil's trial counsel was not ineffective for not challenging the warrant.

Third, O'Neil claimed that his counsel provided ineffective assistance by failing to file a motion to suppress evidence related to his cell phones. The district court disagreed because *Riley v. California*, 573 U.S. 373 (2014), which served as the basis of O'Neil's claim, did not apply retroactively to the 2011 search. It also noted that the warrant authorized the seizure of Taylor's cell phones, and the officers who seized O'Neil's phones could have reasonably believed they belonged to Taylor. Finally, the court found that O'Neil had not identified any prejudicial evidence obtained via the search. Therefore, that claim failed as well.

Fourth, O'Neil averred that his counsel was ineffective for not filing a motion to suppress his confession. The district court found that trial counsel's decision not to challenge that evidence was reasonable because the police read O'Neil his *Miranda* rights twice. It also noted that O'Neil did not show prejudice because other evidence, including co-conspirator testimony, established O'Neil's involvement in the conspiracy.

Fifth, O'Neil argued that his counsel was ineffective because he failed to: (1) meet with O'Neil frequently, (2) adequately investigate the case, and (3) call certain unidentified witnesses. The district court found that O'Neil's counsel's trial strategy was not ineffective. The court noted that counsel focused on challenging the drug quantity. The jury appeared to adopt those arguments, as it found that O'Neil was responsible for a lesser amount than the government advocated, which resulted in a

-4-

lower sentence. The court also rejected O'Neil's witness argument because he failed to provide the witnesses' names and the substance of their potential testimonies.

Sixth, O'Neil maintained that effective counsel would have challenged his career-offender status. O'Neil was previously convicted for an Illinois controlled-substance offense. *See* 720 Ill. Comp. Stat. § 570/405.1(a). The relevant Illinois statute applies to "offense[s] set forth in Section 401, Section 402, or Section 407." *Id.* The court agreed with O'Neil that Section 402 was likely overbroad. But applying the modified categorical approach, it found that O'Neil's conviction arose out of Section 401, which was not. Therefore, any objection would have been meritless. Further, the court noted that the Guidelines range would have been the same regardless of his career-offender status, so any error was not prejudicial.

Lastly, O'Neil asserted that his counsel was ineffective because he failed to request a specific fact finding at his resentencing. O'Neil received a two-level sentence enhancement because he obstructed justice. O'Neil's counsel objected to some facts in the presentence investigation report (PSR) that indicated he intimidated a witness. However, the allegation was also supported by unobjected-to facts. The sentencing court applied the enhancement without specifying the facts it was relying on. O'Neil claims he was prejudiced because the Bureau of Prisons (BOP) found that the sentencing court adopted the objected-to facts in the PSR and used those facts to deny him early release. The district court found that this argument was outside of the scope of its review: The enhancement was upheld on appeal and a ruling that O'Neil's counsel was ineffective would require displacing that holding. Further, other evidence supported the enhancement and consideration of the BOP decision was outside of the court's authority under 28 U.S.C. § 2255.

In sum, the district court found that O'Neil failed to show that his trial counsel was ineffective. The district court granted O'Neil a certificate of appealability on all of his claims except those regarding the trial-strategy and career-offender issues.[4]

[4]On appeal, O'Neil again claims that his counsel was ineffective for failing to (1) meet with him, investigate the case, and call certain witnesses; and (2) object to his career-offender status. Because the district court's certificate of appealability does not cover those claims, we do not review those issues. *See Barajas v. United States*, 877 F.3d 378, 380 n.3 (8th Cir. 2017).

Further, the district court recently granted O'Neil's motion for compassionate release. *See United States v. O'Neil*, No. 3:11-CR-00017, 2020 WL 2892236, at *9 (S.D. Iowa June 2, 2020). Thus, his term of imprisonment is expired. Where a § 2255 motion challenges a "term of imprisonment, which has . . . expired," the challenge is moot. *Owen v. United States*, 930 F.3d 989, 990 (8th Cir. 2019). But where "a petitioner, though released from custody, faces sufficient repercussions from his allegedly unlawful punishment, the case is not moot." *Leonard v. Nix*, 55 F.3d 370, 372–73 (8th Cir. 1995). "Collateral consequences are presumed to stem from a criminal conviction even after release." *Id.* at 373; *see also Farris v. United States*, No. 4:15-CV-01728-JAR, 2019 WL 316567, at *2 (E.D. Mo. Jan. 24, 2019) ("To the extent Farris is challenging his sentence, even if the Court were to rule in his favor, such a holding would have no effect . . . . To the extent that Farris is challenging not just his sentence, but also his conviction, the completion of his sentence does not necessarily render his motion moot."). O'Neil's ineffective-assistance-of-counsel claims regarding the search warrant and motions to suppress turn on the validity of his conviction, not the validity of his sentence. Therefore, we presume that those claims bore collateral consequence and are not mooted by his release. But his claim regarding the obstruction-of-justice enhancement is a challenge to his "term of imprisonment" and is therefore moot. *Owen*, 930 F.3d at 990; *see also Blakeney v. Huetter*, 795 F. App'x 493, 494 (8th Cir. 2020) (per curiam) ("A ruling that [O'Neil's] early-release date was improperly [denied] would not affect his current term of supervised release . . . .").

-6-

## II. *Discussion*

O'Neil reasserts all of his ineffective-assistance-of-counsel claims. "On appeal, we review the district court's factual findings for clear error and the legal question whether those findings amount to ineffective assistance de novo." *Long v. United States*, 875 F.3d 411, 413 (8th Cir. 2017) (cleaned up). Still, "[o]ur review is highly deferential, with a strong presumption that counsel's performance was reasonable." *Love v. United States*, 949 F.3d 406, 409 (8th Cir. 2020).

"The standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.E.2d 674 (1984), provides the framework for evaluating [O'Neil's] ineffective-assistance-of-counsel claim." *Anderson v. United States*, 762 F.3d 787, 792 (8th Cir. 2014). O'Neil "must show that his counsel's performance was deficient and that [he] suffered prejudice as a result" to prove a violation of his Sixth Amendment rights. *Id*.

"Deficient performance is that which falls below the range of competence demanded of attorneys in criminal cases." *Bass v. United States*, 655 F.3d 758, 760 (8th Cir. 2011) (internal quotation omitted). "*Strickland* sets a 'high bar' for unreasonable assistance." *Love*, 949 F.3d at 410 (quoting *Buck v. Davis*, 137 S. Ct. 759, 775 (2017)). Only a performance "outside the wide range of reasonable professional assistance" is constitutionally deficient. *Id.* (internal quotation omitted). "We make every effort to eliminate the distorting effects of hindsight and consider performance from counsel's perspective at the time." *Id.* (internal quotation omitted).

"Prejudice requires the movant to establish 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Bass*, 655 F.3d at 760 (quoting *Strickland*, 446 U.S. at 694). We now turn to O'Neil's claims.

A. Franks *and Probable Cause*

O'Neil argues that his counsel's failure to request a *Franks* hearing rendered his representation ineffective. Alternatively, he avers that his counsel should have argued that there was no probable cause justifying issuance of the warrant.

Under *Franks*, "[a] search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with reckless disregard for the truth." *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001). "To prevail on a *Franks* claim the defendants must show: (1) that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit; and (2) that the affidavit's remaining content is insufficient to establish probable cause." *Id.*

In the search warrant affidavit, the affiant replaced Aaren's name with Taylor's when describing who the confidential informant said sold drugs out of the apartment and who was involved in the controlled buy.[5] The district court determined that the name switch constituted a recklessly made false statement. The government does not dispute that finding here. Instead, the parties focus on whether "the affidavit's remaining content[s] [are] insufficient to establish probable cause." *Reinholz*, 245 F.3d at 774.

---

[5]O'Neil also argues that the affidavit contained a material omission: It did not indicate that the confidential informant provided information for leniency in his own case. But under our precedent, that omission did not warrant a *Franks* hearing because the information was corroborated by the controlled buy. *See United States v. Carnahan*, 684 F.3d 732, 735 (8th Cir. 2012) ("Omitting that a confidential informant has a criminal record or is cooperating does not satisfy [the *Franks*] standard when the informant's information is partially corroborated . . . ."). Therefore, O'Neil's counsel was not ineffective for failing to request a *Franks* hearing on that issue.

"Probable cause is a fair probability that . . . evidence of a crime will be found in the location to be searched." *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996). In that inquiry, we give "substantial deference to the . . . issuing judge." *Id.* "When, as here, the issuing court relies solely on an affidavit to determine whether probable cause exi[s]ts, only the information found within the four corners of the affidavit may be considered." *United States v. Wells*, 347 F.3d 280, 286 (8th Cir. 2003) (internal quotation omitted).

Without Taylor's identity, the affidavit provides that the confidential informant informed officers that a woman and man were selling drugs out of the apartment. It also describes the controlled purchase, during which the police watched an unidentified woman walk from the back of the relevant apartment complex, make the sale, and then enter the identified apartment. The district court believed that was enough to indicate that evidence of the crime would be found in the apartment.

We agree. In *Wells*, we found that allegations in a warrant affidavit created a fair probability that evidence of crime would be in a home. 347 F.3d at 286. The affidavit described records that connected the defendant to the address and officers' observations of the defendant leaving the address prior to two controlled sells. *Id.*

O'Neil argues that *Wells* was a stronger case. That may be so. In that case, there were multiple controlled buys and documents connecting the seller to the address. *Id.* The evidence here consists of an initial observation of the seller near the apartment—she came from the back of the complex with the drugs—and a later observation of her entering the specified apartment after the sale. And unlike *Wells*, where documents tied the suspect to the home to be searched, here, utility records tied Taylor, who was not involved in the controlled buy, to the apartment. Nonetheless, the officers had information from the confidential informant that drugs were sold by a woman out of the identified apartment. That information was corroborated by the controlled buy because the seller returned to the identified apartment. That connected

the seller, her drug activity, and the relevant apartment. *See United States v. Archibald*, 685 F.3d 553, 557–58 (6th Cir. 2012) (finding a single controlled buy, which was executed under surveillance, was enough to establish probable cause for a search warrant of the apartment where the buy occurred). Further, although the seller was not seen coming from the identified apartment, it appears that the magistrate judge found that her entry into that apartment after the sale made it probable that evidence of criminal activity was within. Given the deference owed to the magistrate judge, we affirm that conclusion. *See LaMorie*, 100 F.3d at 552.

O'Neil also takes issue with the district court's analytical process. The district court switched the given identity in the affidavit—Taylor—to "an unidentified female" when conducting the probable cause analysis. O'Neil argues that the court should have (1) deleted the entire paragraphs that erroneously referred to Taylor,[6] or (2) replaced her name with Aaren's.

*Franks* mandates that "material that is the subject of the alleged falsity or reckless disregard [must be] set to one side." 438 U.S. at 171–72. Under that language, the district court did not err: O'Neil does not challenge that a woman sold the drugs. Instead, the faulty information here was the identity of the woman who sold the drugs. Under *Franks*, only that identity need be set aside; the affiant used the wrong name in affidavit, but the affidavit's description of the sale was otherwise correct.

O'Neil argues that our case law suggests otherwise. He cites to *Reinholz* and claims that we upheld the deletion of an entire paragraph that contained false information. 245 F.3d at 774–75. There, a pharmacist reported suspicious activity to

---

[6]The paragraphs that erroneously referenced Taylor made up most of the affidavit; they contained the informant's tip and an account of the controlled buy. *See* Appellant's Add. at 16. If we excised those paragraphs, the affidavit would only indicate that the affiant had drug-enforcement experience and Taylor held utilities for an apartment.

police. *Id.* at 770. He indicated that the defendant attempted to purchase iodine crystals, he knew of no legitimate use for iodine crystals, and the defendant drove a Camry. *Id.* The affiant altered some of the information in the warrant affidavit; the relevant paragraph indicated that "a confidential and reliable source" said that the defendant was "involved in the use of methamphetamine," "may . . . be involved in the distribution of methamphetamine," and drove a Camry. *Id.* at 771 (internal quotation omitted).

Because it contained misrepresentations, we found that the "district court properly deleted the [relevant] paragraph." *Id.* at 775. O'Neil latches onto this statement and argues that the district court should have deleted the entire paragraph here. O'Neil misreads *Reinholz*. *Reinholz* stated that "[w]e remedy a *Franks* misrepresentation by deleting the false statements." *Id.* We upheld the deletion of the entire fifth paragraph because "[t]he *entire* fifth paragraph . . . contain[ed] false information." *Id.* (emphasis added). In other words, deletion of the whole paragraph was warranted because the entire paragraph contained false information.

That is not the case here; the paragraphs O'Neil challenges contained uncontested allegations. The district court did not err by leaving that information undisturbed. Because the identifying information was false, the district court deleted it. That provided a proper remedy for the *Franks* violations. *See id.* Even with that deletion, the affidavit's contents were sufficient to indicate that there was likely evidence of an illicit drug sale within the home, as discussed above.[7] Thus, O'Neil has

---

[7]O'Neil argues that substituting an "unidentified woman" for Taylor was erroneous because the affiant knew that Aaren Verrett made the sales. Even if that was so and the names were switched, probable cause supported the search warrant; the confidential informant would have identified an individual who sold drugs out of the home, and that individual would have made a sale and returned to the home. As the district court concluded, there still would have been a probability that evidence of criminal activity was in the home under those circumstances.

not established that the results of his proceedings would have been different even if his counsel requested a *Franks* hearing or challenged the warrant on probable cause grounds. Therefore, trial counsel was not ineffective.

## B. *Warrant Endorsement*

As described above, the search warrant relied on information obtained from a confidential informant. The issuing magistrate reviewed an "Informant's Attachment" accompanying the warrant affidavit, which listed law enforcement's reasons for finding the informant reliable. In relevant part, this document listed form statements, which provided reasons for considering the informant reliable. The detective affiant indicated that the informant was reliable because he or she: "[wa]s a mature individual"; "[wa]s a person of truthful reputation"; "[h]a[d] no motivation to falsify the information"; "[h]a[d] otherwise demonstrated truthfulness"; "[h]a[d] not given false information in the past"; and his or her information was "*corroborated by law enforcement personnel.*" Appellant's Add. at 18 (emphasis added.)

O'Neil argues that the warrant should not have issued because the magistrate judge did not affirmatively find the confidential source credible since "he failed to sign the Endorsement." Appellant's Br. at 28. He contends the absence of the magistrate judge's signature indicates the magistrate judge acted merely as "a rubber stamp." *Id.*

O'Neil is correct that the magistrate judge did not select one of three available options on the "ENDORSEMENT ON SEARCH WARRANT APPLICATION" indicating that the informant was credible. Appellant's Add. at 19. The magistrate judge, however, did sign the Endorsement. *See id*. O'Neil provides no authority for the proposition that the absence of the magistrate judge's check mark next to one of the reasons supporting the source's reliability invalidates the warrant. The magistrate judge signed the endorsement and the warrant. O'Neil has not shown that the reasons supporting the confidential source's reliability stated in the warrant affidavit were false or misleading. The warrant affidavit specifically declared that the informant's

information was credible because it was corroborated by further investigation; law enforcement observed the confidential source's controlled buy with the presumed occupant of the apartment. *See United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013) ("Information may be sufficiently reliable to support a probable cause finding if it is corroborated by independent evidence." (cleaned up)). Therefore, the alleged magistrate judge's error, even if it is error, did not affect the validity of the warrant. Thus, counsel's decision not to challenge the warrant on this ground did not affect the outcome of the case.

## C. *Cell-Phone Evidence*

O'Neil also avers that his counsel should have moved to suppress evidence found on his cell phones. The search warrant for the apartment allowed officers to seize and search Taylor's phones. During its execution, the police found two phones. They obtained the phones' numbers by calling dispatch. It turned out that the phones actually belonged to O'Neil. Therefore, the warrant did not facially cover the search.

The Supreme Court has recently held "that officers must generally secure a warrant before conducting" a cell-phone search. *Riley*, 573 U.S. at 386. O'Neil claims that holding rendered (1) the search of his phone illegal and (2) evidence found through that search fruit of the poisonous tree. Therefore, he asserts that his counsel should have moved to suppress that evidence.

O'Neil's argument ignores legally vital dates. The Supreme Court's *Riley* holding became law more than two years after a jury convicted O'Neil. Considering this very argument, we have held that a "counsel's failure to raise a novel argument does not render his performance constitutionally ineffective." *Basham v. United States*, 811 F.3d 1026, 1029 (8th Cir. 2016) (cleaned up). Still, O'Neil argues that "the holding in *Riley* was clearly portended at the time of [his] conviction." *Id.* We rejected the same argument in *Basham*. *Id.* at 1030. Therefore, similarly, we hold that O'Neil's "counsel did not act constitutionally deficient in failing to file a motion to suppress." *Id*.

### D. *O'Neil's Confession*

During his trial, the government offered testimony describing a confession O'Neil made to officers. O'Neil argues that (1) he did not waive his *Miranda* rights before the confession and (2) his confession was not made knowingly and voluntarily. He also claims that police questioning continued after he requested an attorney. On that basis, O'Neil asserts that his counsel should have objected to the introduction of the confession.

In response to this allegation, trial counsel submitted an affidavit for the district court's habeas review that indicated that "O'Neil had been Mirandized prior to any statements being made. In fact, I believe Mr. O'Neil was Mirandized twice before he [gave his confession]. Thus, *[trial] counsel was unaware of any grounds on which to base a motion to suppress*." Aff. of Att'y at 3, *O'Neil v. United States*, No. 4:16-cv-00126-RP (S.D. Iowa Nov. 3, 2016), ECF No. 8 (emphasis added).

O'Neil does not indicate that his counsel was ever aware that his statement was given without *Miranda* warnings, involuntarily, or after he requested an attorney. O'Neil "does not allege[] that this lack of knowledge was due to any neglect on trial counsel's part." *Bell v. Att'y Gen. of Iowa*, 474 F.3d 558, 561 (8th Cir. 2007) (finding that, because the defendant did not allege that his counsel failed to investigate, his attorney's failure to challenge a potential Fifth Amendment violation that he was unaware of until trial did not rise to the level of ineffective assistance). Given that trial counsel believed O'Neil received *Miranda* warnings and knew of no basis to move to suppress the confession, we cannot say that he acted outside of "the wide range of reasonable professional assistance." *Love*, 949 F.3d at 410 (internal quotation omitted).

### III. *Conclusion*

In summary, O'Neil has not shown that any of his attorney's alleged errors both (1) were constitutionally deficient and (2) prejudiced him. *See Anderson*, 762 F.3d at 792. For those reasons, we affirm the district court's denial of his § 2255 motion.

_____